**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Timothy N. Trainer,

       Plaintiff,                      **Case No. 16-cv-4335 (DSD/SER)**

v.

                                         **ORDER**

Continental Carbonic Products, Inc.,

       Defendant.

---

    Matthew J. Schaap, Esq., Dougherty, Molenda, Solfest, Hills & Bauer P.A., Apple Valley, Minnesota, for Plaintiff.

    Alyssa M. Toft, Esq., Jackson Lewis P.C., Minneapolis, Minnesota, for Defendant.

STEVEN E. RAU, United States Magistrate Judge

    This matter comes before the Court on Defendant Continental Carbonic Products, Inc.'s ("CCPI") Motion to Compel Discovery, for Spoliation Sanctions Including Dismissal of Action, and for Attorneys' Fees ("Motion to Compel") [Doc. No. 42]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b) and District of Minnesota Local Rule 72.1. For the reasons stated below, the motion is denied.

**I.    BACKGROUND**

    Plaintiff Timothy N. Trainer ("Trainer") is a white male whose wife is African-American and whose children are biracial. (Am. Compl.) [Doc. No. 13 ¶¶ 9–10]. CCPI's Burnsville location hired Trainer in August 2013 as a full-time driver. (*Id.* ¶ 8). After learning about the race of Trainer's family members, Trainer's coworker, Travis Gilder ("Gilder"), began making "offensive and derogatory comments" regarding Trainer's family. (*Id.* ¶ 13). Gilder also made racist jokes and showed Trainer racist cartoons and memes. (*Id.* ¶ 15). Gilder was promoted to

assistant manager in September 2014, thereby becoming Trainer's direct supervisor, and continued to make racist jokes and comments. (*Id.* ¶¶ 16–17).

In April 2015, Gilder again made racist statements about Trainer's family, and the two had a verbal altercation. (*Id.* ¶ 18). Trainer called an employee in CCPI's human resources office to report the behavior. (*Id.* ¶ 19). Trainer then called human resources repeatedly because his calls were not returned for seven to ten days. (*Id.* ¶ 20). During this period, Gilder continued to attempt to contact Trainer. (*Id.* ¶ 21). CCPI fired Gilder three weeks after Trainer's first complaint. (*Id.* ¶ 24). In October 2015, Trainer requested CCPI's investigation file regarding Gilder because he wanted to file a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 25–26). CCPI refused to provide the file, and fired Trainer three weeks later. (*Id.* ¶¶ 27–28).

Trainer alleges that CCPI violated the Minnesota Human Rights Act provisions based on his familial status and that CCPI wrongfully terminated him. (*Id.* ¶¶ 29–44).

In its Motion to Compel, CCPI argues Trainer deleted text messages and emails that are responsive to its discovery requests. *See* (Def.'s Mem. of Law in Supp. of Mot. to Compel, "Mem. in Supp.") [Doc. No. 45 at 1]. CCPI seeks various forms of relief related to this spoliation, and also seeks information regarding Trainer's tax returns, government benefits, evictions, and phone records. (*Id.* at 22–30). CCPI also seeks attorney's fees. (*Id.* at 30–31).

Following the hearing, the Court ordered the parties to engage in further meet-and-confer efforts. (Minute Entry Dated May 14, 2018) [Doc. No. 52]. As a result, the parties resolved the majority of their dispute. (Letter Dated May 21, 2018) [Doc. No. 54]. The remaining issues relate to text messages and emails that CCPI argues have not been produced and are relevant to the

claims and defenses in this case.[1] CCPI also seeks spoliation sanctions—up to and including dismissal of this lawsuit—and attorneys' fees. *See* (Mem. in Supp. at 12) (requesting dismissal); (*id.* at 16–18) (requesting an adverse-inference instruction and a finding that destroyed evidence was unfavorable to Trainer); (*id.* at 18) (requesting "any and all appropriate relief" and monetary sanctions); (*id.* at 30) (requesting reimbursement of reasonable expenses and attorney's fees).

## II. DISCUSSION

The Court first discusses whether the text messages and emails should be produced, followed by a discussion of sanctions.

### A. Compelling Production

#### 1. Legal Standard

The Federal Rules permit

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). But discovery is not boundless. Discovery must be limited if:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

---

[1] Although the parties' joint letter refers only to text messages, the parties provided the Court with informal correspondence regarding the remaining issues that refers to both text messages and emails. Because there is overlapping reasoning related to both, and in an effort to fully resolve the Motion to Compel, the Court addresses emails in addition to text messages.
Further, the Court discusses text messages and emails broadly, rather than analyzing each request separately because the text of various written discovery requests is often repetitive.

3

Fed. R. Civ. P. 26(b)(2)(C). Courts have broad discretion to decide discovery motions. *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 344 (8th Cir. 2012).

### 2. Analysis

The discovery at issue is electronically stored information ("ESI"). ESI discovery requires a significant amount of attention from both the parties and the Court. To this end, the undersigned dedicates his attention to this issue during the process of establishing the pretrial scheduling order. *See* (Notice of Pretrial Scheduling Conf.) [Doc. No. 25 at 4] (requiring a discovery plan to include "[h]ow the parties propose handling any issues relating to the disclosure or discovery of [ESI], including the form or forms in which it should be produced"); (*id.* at 6) (ordering the parties to be prepared to substantively discuss ESI issues at the pretrial scheduling conference). In this case, the parties agreed to produce ESI in PDF format, with an option "to seek discovery from the original source format if necessary." (Rule 26(f) Report) [Doc. No. 26 at 5]. Despite the Court's best efforts, this dispute relates to the lack of production and preservation of ESI.

The Court addresses CCPI's requests related to text messages and emails separately. They arise out of similar discovery requests, but have distinct subjects and histories.

#### a. Text Messages Between Trainer and Gilder

Several of CCPI's requests for production of documents request text messages. *See* (Def.'s Mem. of Law in Supp. of its Mot. to Compel, "Mem. in Supp.") [Doc. No. 45 at 8]. Both Trainer and Gilder produced text messages to CCPI in the course of CCPI's investigation into Gilder's conduct, which underlies this Complaint. In April 2015, Trainer provided CCPI with a copy of text message exchanges between himself and Gilder. (Mem. in Supp. at 9); (Ex. H)

[Doc. No. 46-1 at 80].[2] Gilder likewise provided his text messages as part of the investigation, and the two productions differ. (Mem. in Supp. at 9); *compare* (Ex. H) (text messages Trainer provided to CCPI), *with* (Ex. I) [Doc. No. 46-2 at 1–13] (text messages Gilder provided to CCPI). In the messages Gilder provided to CCPI, Trainer complains about CCPI, says that he will contact an attorney, and says that he will quit. *See* (Ex. I). CCPI argues "[t]hese text messages to go the heart of the claims and defenses in this matter" because Trainer confided his plans to sue CCPI to Gilder, Trainer was looking for a reason to quit, and Trainer was looking for a reason to sue CCPI. (Mem. in Supp. at 10).

During his deposition, Trainer stated that he deleted his text messages with Gilder after he provided them to CCPI because he needed the storage space on his cell phone. (Ex. E) [Doc. No. 46-1 at 62]. CCPI asks the Court to compel the production of Trainer's deleted text messages by ordering that Trainer produce his devices for forensic imaging and review at Trainer's expense. (Mem. in Supp. at 21). CCPI also asks that Trainer sit for another deposition and seeks fees and costs. (*Id.*).

The messages between Trainer and Gilder are marginally relevant at best. Trainer provided them to CCPI with an intent to show that he was concerned that Gilder was worried about "backlash" to himself (Gilder) based on issues with Trainer's driving status. (Ex. E) [Doc. No. 46-1 at 65, 71]. CCPI asserts additional messages between Trainer and Gilder are necessary to its defense to show that Trainer had a friendly relationship and the two were confidants. (Mem. in Supp. at 16). But CCPI has text messages from Gilder that show additional correspondence between Trainer and Gilder that it likewise claims demonstrates their friendly relationship. (Mem. in Supp. at 10). Nothing in CCPI's arguments shows that additional text

---

[2] All Exhibits referenced in this Order are attached to the Declaration of Alyssa Toft [Doc. No. 46]. The Court refers to the document number and CM/ECF pages of the Exhibits.

messages of the same tenor would further bolster CCPI's defense in this respect. *See* Fed. R. Civ. P. 26(b)(2)(C) (stating a court may limit duplicative discovery). Additionally, Trainer has averred that Gilder did not harass him via text message, and nothing in the record suggests that this is untrue. *See* (Dec. of Timmy Trainer, "Trainer Decl.") [Doc. No. 50 ¶ 5]. Trainer testified that the references to a lawsuit and a lawyer relate to a potential age discrimination claim, which he later realized would be fruitless. (*Id.* ¶ 6). Even if this demonstrates that Trainer always intended to sue CCPI, as CCPI suggests, it has the messages it needs to assert this argument because Gilder produced them. *See* (Mem. in Supp. at 9–10). CCPI also asserts that Trainer must be hiding something because he deleted some messages where he made disparaging remarks about CCPI. *See* (Mem. in Supp. at 8). But there is a plausible explanation for this: as Trainer testified, he did not want his employer to "see" him speaking badly of the company because some part of him wanted to keep his job. (Ex. E) [Doc. No. 46-1 at 71]. Deploying forensic imaging, as CCPI requests, seems to be the only method available to retrieve the messages Trainer acknowledged he deleted between himself and Gilder. (Ex. E) [Doc. No. 46-1 at 62] (Trainer's deposition testimony that he was unable to recover the content of his text messages with Gilder); (Ex. V) [Doc. No. 46-3] (Trainer's counsel's statement that Trainer's service provider informed Trainer that "text communications cannot be recovered for any relevant times in 2015"). But because the messages are only marginally relevant and because Gilder already produced the messages, forensic imaging is not proportional to the needs of this case.[3] *See* Fed. R. Civ. P. 26(b)(1). Therefore, the Court will not compel the production of text messages between Trainer and Gilder.

---

[3] CCPI did not provide a cost estimate of the imaging process, but in this Court's experience, the cost is significant, and it is not warranted here.

### b.    Other Text Messages

Trainer testified that he continues to delete text messages with another former CCPI employee. (Ex. E) [Doc. No. 46-1 at 76] (Trainer's statement that he deletes his text messages "pretty much every night"). Trainer avers that he has not communicated with other former or current CCPI employees about this case, and nothing in the record suggests that this is untrue. *See* (Trainer Decl. ¶¶ 18–19). CCPI appears to argue that because the information was requested, it must be relevant. *See* (Mem. in Supp. at 16); (Def.'s Reply Mem. of Law in Supp. of Mot. to Compel) [Doc. No. 51 at 3–4]. Although Trainer acknowledges that he deletes his text messages on a daily basis, CCPI has failed to establish that Trainer deletes **relevant** text messages. Therefore, the Court will not compel production of Trainer's text messages.

### c.    Emails

CCPI's written discovery requests include emails. *See* (Mem. in Supp. at 8). Trainer produced some emails, but some of the text appears to have been cut off when it was printed or produced. *See* (Ex. K) [Doc. No. 46-2 at 29–36]. CCPI asserts that these emails "appear to relate to [Trainer's] damages/mitigation." (Mem. in Supp. at 11). The Court refers to these as the Damages Emails. CCPI tried to obtain better copies but ultimately, Trainer's counsel advised that the emails were deleted. (Ex. V) [Doc. No. 46-3 at 16]. During his deposition, Trainer testified that he deleted an email from Jason Taulbee ("Taulbee"), who is apparently a former or current CCPI employee, "within a day or two of getting it."[4] (Ex. E) [Doc. No. 46-1 at 75]. The Court refers to these as the Taulbee Emails.

---

[4]    Specifically, Trainer said that he deleted these emails in response to the question "When did you start deleting e-mails related to CCPI?". (Ex. E) [Doc. No. 46-1 at 75]. There is no information in the surrounding deposition pages nor in CCPI's briefing that explains Taulbee's relationship to this litigation or CCPI.

Assuming CCPI's interpretation is correct, the Damages Emails are, as CCPI asserts, relevant to Trainer's mitigation of his damages. *See* (Mem. in Supp. at 11). Compelling the production of emails from some other source, however, is ultimately not proportional to the needs of this case given their relatively low importance. *See* Fed. R. Civ. P. 26(b)(1). Further, CCPI could have—and perhaps did—explored this defense during Trainer's deposition. *See* Fed. R. Civ. P. 26(b)(2)(C) (stating that a court may limit discovery that can be "obtained from some other source that is more convenient, less burdensome, or less expensive"). With respect to the Taulbee Emails, CCPI has not established that these emails are relevant. For the foregoing reasons, the Court will not compel the production of emails.

### B. Sanctions

#### 1. Legal Standard

CCPI seeks spoliation sanctions under Rule 37(e), which states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to the party;
>
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>     (C) dismiss the action or enter a default judgment.

*See also* (Mem. in Supp. at 12).

**2.     Analysis**

The Court concludes spoliation sanctions are unwarranted for both text messages and emails. With respect to the text messages between Trainer and Gilder, the parties dispute whether Trainer had an obligation to preserve these messages. CCPI argues Trainer's obligation began in April 2015, when he decided to file an EEOC complaint. (Mem. in Supp. at 13). Trainer avers that, despite his comments in the text messages, he did not seriously consider litigation until late 2015 and did not know that filing with the EEOC was a requirement for filing a lawsuit until October 2015. (Trainer Decl. ¶¶ 9–10). The Court finds that based on Trainer's statements delineating his understanding of EEOC complaints and when he contemplated initiation of a lawsuit, Trainer was not required to preserve the text messages he exchanged with Gilder in 2015. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation."); *see also* (Pl.'s Mem. of Law in Opp'n to Mot. to Compel) [Doc. No. 49 at 10] (noting that Trainer is "an unsophisticated individual who had no litigation experience in April 2015"). Because there was no requirement to preserve the information, spoliation sanctions are not warranted.[5] *See* Fed. R. Civ. P. 37(e), advisory committee notes 2015 (stating that Rule 37(e) "does not apply when information is lost before a duty to preserve arises").

The Court next considers spoliation sanctions with respect to the other text messages. "The obligation to preserve evidence begins when a party knows or should have known that the

---

[5]     Even if Trainer was required to preserve text messages—which the Court concludes he was not—nothing in the record demonstrates that Trainer deleted the messages in order to deprive CCPI of their use in this litigation, which is required to impose spoliation sanctions under Rule 37(e)(2).

evidence is relevant to future or current litigation." *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005) (Kyle, J., adopting reporting and recommendation of Boylan, Mag. J.) (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004)). According to Trainer's deposition testimony, these messages appear to be exchanged after this lawsuit started and appear to fall within the purview of documents CCPI requested in discovery. (Mem. in Supp. at 8); (Ex. E) [Doc. No. 46-1 at 76]. Arguably, the more cautious approach would have been for Trainer to preserve the text messages and resist production through a motion for a protective order. *See* Fed. R. Civ. P. 26(c). But, as stated above, CCPI has not demonstrated why these messages are relevant to this lawsuit in contrast to Trainer's statements that the messages are not about or related to this litigation. *See* (Ex. E) [Doc. No. 46-1 at 76]; (Trainer Decl. ¶¶ 18–19). Even if Trainer was required to preserve these text messages, the record does not demonstrate—much less suggest—that he deleted any text messages in order to prevent CCPI from using them in this litigation, as required by Rule 37(e). Trainer's behavior is more accurately considered negligent, rather than intentional as Rule 37(e) requires. Negligence in turn, does not support an inference that a party intentionally destroyed evidence and sanctions are not appropriate. *See, e.g.*, Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendments (stating that adverse-inference instructions "were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference"); *see also Stevenson*, 354 F.3d at 749 (noting that the Eighth Circuit has "never approved of giving an adverse inference instruction on the basis of negligence alone").

Similarly, because CCPI has not demonstrated that Trainer has deleted relevant text messages, it has not demonstrated that it is prejudiced as required under Rule 37(e)(1).

The Court also declines to award spoliation sanctions for the deleted emails for the same reasons explained as related to the other text messages. In short, at the time of the emails—late 2015 and early 2016—Trainer was contemplating litigation. *See* (Ex. K);[6] *see also* (Trainer Decl. ¶ 10) (Trainer's statement that he began "thinking about a lawsuit in late 2015" but "did not make a decision to act on it until [he] met with an attorney in 2016"). Therefore, he should have preserved the emails. And in fact, Trainer did preserve them and they were produced. CCPI's characterizes these emails as "unreadable" and "incomplete," but after reviewing them, the Court finds that they can likely be used for their intended purpose—to show Trainer applied for other jobs. *See* (Mem. in Supp. at 11, 18); (Ex. K) [Doc. No. 46-1 at 29–36]. Nothing in the record demonstrates that CCPI is prejudiced by the missing emails, nor that Trainer deleted the emails with the intent of preventing CCPI from using them in this litigation. *See* (Trainer Decl. ¶ 33) (Trainer's statement that emails were not cut off intentionally). Therefore, the Court determines spoliation sanctions are not appropriate.

Because the Court denies the production of text messages and emails and denies spoliation sanctions, the Court likewise determines that attorney's fees are not appropriate.

Despite the fact that the Court is not compelling the production of text messages and emails and is declining to award sanctions, the Court cautions the parties to pay close attention in this case, and in all of their cases, to the important role ESI plays in discovery.

---

[6] CCPI does not provide any information regarding the dates of emails with Taulbee. *See* (Mem. in Supp. at 12). From Trainer's deposition, however, it appears that the emails were eon April 23, 2015 (testimony regarding emails to "Jason," which is Taulbee's first name). (Ex. E) [Doc. No. 46-1 at 68].

### III. CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Continental Carbonic Products, Inc.'s Motion to Compel Discovery, for Spoliation Sanctions Including Dismissal of Action, and for Attorneys' Fees [Doc. No. 42] is **DENIED**.

Dated: June 15, 2018

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge
